IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHAWANNA WRIGHT**, | CIVIL ACTION NO. 17-747 |
| Plaintiff, | CHIEF JUDGE JOY FLOWERS CONTI |
| v. | |
| **PROVIDENCE CARE CENTER, LLC** *and* **BEAVER VALLEY ASSOCIATES, LLC** *doing business as* PROVIDENCE CARE CENTER, | |
| Defendants. | |

## **MEMORANDUM OPINION**

Defendants Providence Care Center, LLC and Beaver Valley Associates, LLC ("Defendants") filed a motion (ECF No. 14) to partially dismiss the First Amended Civil Action Complaint ("Amended Complaint") filed by Plaintiff Shawanna Wright ("Wright") in this employment discrimination case. Wright filed a response in opposition to the motion, Defendants filed a reply, and the motion is ripe for disposition.

Factual and Procedural Background

Plaintiff is an African-American female with various disabilities, including asthma oral allergy syndrome. She was employed by Defendants for thirteen years as a Licensed Practical Nurse ("LPN"). Wright alleges that she was subjected to discriminatory and retaliatory treatment because of her race, disability or requests for reasonable accommodations. (Amended Complaint, ECF No. 12).

1

On September 15, 2015, shortly after RN Supervisor Bobbye Lutz ("Lutz") assigned her to a less-desirable unit, Wright filed her first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 15-1). On June 29, 2016, the EEOC issued a Notice of Dismissal and right to sue letter to Wright. (ECF No. 15-2). Wright did not file a lawsuit within ninety days of receiving the EEOC letter.

Following the first EEOC charge, Wright alleges that she was subjected to continued hostility, including an accusation of intimidating a co-worker into taking a shift on a different floor, and two pretextual disciplines. Wright did not plead any facts regarding the circumstances leading to these disciplines. She avers that Lutz told her that unit manager Lisa Brewer ("Brewer") recommended them, and Brewer signed a statement denying it. (Amended Complaint ¶¶ 32-34).

From March through July 11, 2016, Wright was on medical leave. She returned to work without any restrictions. Wright alleges that the discriminatory and retaliatory treatment continued. For example, Lutz did not believe that Wright was able to work and should go on Social Security disability; in May 2016, on a day that Wright returned to work, management provided a bushel of bananas to the nurses, even though they knew Wright was allergic to them; Lutz went out of her way to ignore Wright in the hallways, but greeted white, non-disabled co-workers; Lutz accused Wright of bullying a co-worker into taking a shift on a different floor; Lutz falsely accused Wright of violating the policy for making medication errors, while a white, non-disabled co-worker made multiple medication errors but was not punished; and management lost Wright's requests for days off and required her to work on days she requested to be off. (Amended Complaint ¶ 38).

Wright was terminated by Lutz in September 2016, purportedly for getting into an altercation with another employee. Wright alleges that during the incident, the other employee was yelling and being insubordinate while she remained calm. (Amended Complaint ¶ 39).

Wright filed a second charge on October 14, 2016, with the EEOC and the Pennsylvania Human Relations Commission ("PHRC"). The charge alleges that Wright was terminated based on her race, national original or health and in retaliation for her earlier complaints about discrimination. (ECF No. 15-3). She avers that she properly exhausted her administrative remedies and filed this lawsuit within ninety days of receiving a right to sue letter from the EEOC after her second charge. The Amended Complaint has six counts, most of which contain multiple distinct legal theories: (1) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., for actual/perceived/record of disability discrimination, retaliation and hostile work environment; (2) parallel disability theories under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq.; (3) violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., for interference and retaliation; (4) violation of § 1981, 42 U.S.C. § 1981, for racial discrimination, retaliation and hostile work environment; (5) violation of Title VII, 42 U.S.C. § 2000a et seq., for racial discrimination, retaliation and hostile work environment; and (6) parallel racial discrimination theories under the PHRA. Defendants seek dismissal of part of counts one and two and all of counts four, five and six.

The Amended Complaint contains numerous allegations of conduct occurring in July 2015, which formed the basis for Wright's first EEOC charge. *See, e.g.,* Amended Complaint ¶¶ 26-31. The Amended Complaint has a footnote which explains that these facts are pled "as an unlawful employment action (adverse action) under Section 1981 and PHRA only," and are relevant to the Title VII and ADA claims to show evidence of pretext, ongoing antagonism and a pattern of discrimination/retaliation. (Amended Complaint at 6). In her response to the pending motion to dismiss, Wright represents that she does not assert claims under Title VII or the PHRA based on

conduct prior to December 15, 2015 (300 days prior to her second EEOC charge). (ECF No. 20 at 11-12).

**Standard of Review**

The Court of Appeals for the Third Circuit recently reiterated the standards and procedures that a district court must apply when deciding a Rule 12(b)(6) motion to dismiss:

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But a detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," Twombly, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a NGL has acted unlawfully." Iqbal, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability...stops short of the line between possibility and plausibility of entitlement to relief." Id. (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.
>
> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679; see also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Connelly v. Lane Constr. Corp., 809 F.3d 780, 786-87 (3d Cir. 2016). The court explained that a

4

plaintiff need not specify whether she intends to proceed under a "mixed-motive" or a "pretext" theory. Id. at 788. A complaint "need not establish a prima facie case in order to survive a motion to dismiss." Id. Instead, all that is required to meet the post-Twombly pleading standard is "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Id. at 789.

"In deciding a Rule 12(b)(6) motion, a court may consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). In ruling on the pending motion, the court will consider the EEOC charges attached to Defendants' brief. See Zanaglio v. J.J. Kennedy, Inc., No. CV 17-874, 2017 WL 3492696, at *2 (W.D. Pa. Aug. 15, 2017) (considering PHRC filings a defendant provided as exhibits to its motion to dismiss).

Legal Analysis

Defendants assert two arguments for dismissal: (1) only those claims fairly encompassed within the scope of the second EEOC charge are timely; and (2) Wright failed to allege sufficient facts to support a plausible claim of race discrimination. Defendants contend that if the court dismisses the § 1981 and Title VII race discrimination claims, it should dismiss or decline to exercise supplemental jurisdiction over Wright's parallel race discrimination claims under the PHRA.

1.  Claims Based on Conduct Prior to December 19, 2015

Defendants argue that the ADA, Title VII, PHRA and § 1981 claims based on discrete actions occurring more than 300 days prior to the second EEOC charge are time barred. Wright affirms that she is not asserting ADA, Title VII or PHRA claims[1] based on conduct prior to December 19, 2015. (*See* ECF No. 20 at 11-12) ("The adverse action in this case occurred in September of 2016, when Plaintiff was terminated. Plaintiff agrees with Defendants that discrete discriminatory acts are not actionable if time barred (under ADA or Title VII).") This aspect of the motion to dismiss will be GRANTED.

2.  Title VII Race Discrimination Claims

Defendants argue that the race discrimination claims in the Amended Complaint are merely duplicative of the claims in Wright's first EEOC charge. The court does not agree. Wright was fired in September 2016 and filed a second EEOC charge. Her claims based on the termination of her employment could not have been raised in her first EEOC charge. Wright filed this lawsuit within ninety days of receiving the "right to sue" letter after her second EEOC charge. Her claims based on post-December 2015 conduct are timely filed.

In the alternative, Defendants argue that the post-December 2015 allegations fail to support a claim of race discrimination. This argument is meritorious.

Count V of the Amended Complaint asserts three distinct legal theories under Title VII: (1) racial discrimination; (2) hostile work environment based on race; and (3) retaliation. In <u>Gamble v. County of Erie, Pa.</u>, No. CIV.A. 12-150, 2013 WL 5231470 (W.D. Pa. Sept. 16, 2013), the court succinctly summarized the elements of each theory:

---

[1] The § 1981 claims based on the pre-December 2015 conduct will be addressed below.

> The elements of a prima facie case of racial discrimination are that: (1) Plaintiff is a member of a protected class: (2) Plaintiff was qualified for the position she held: (3) Plaintiff suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably or the circumstances of Plaintiff's termination give rise to an inference of discrimination. Kimble v. Morgan Properties, 241 Fed. App'x 895, 897–98 (3d Cir. 2007).
>
> Furthermore, to establish a prima facie case of racial discrimination on the basis of hostile work environment, Plaintiff must prove that: (1) she suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would negatively affect a reasonabl[e] person in the same position; and (5) respondeat superior liability exists. Farmer v. Aramark Corp., 2012 WL 346688, *4 (E.D.Pa.2012), citing Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990)).
>
> . . .
>
> In order to make out a prima facie case of retaliation under Title VII/PHRA, a Plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) that her employer took an adverse action against her; and (3) that a causal link between the protected activity and the employer's adverse action. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

Id. at *5–6. The court is mindful of the instruction in Connelly that the prima facie case is an evidentiary standard, not a pleading standard. Connelly, 809 F.3d at 789.

### A. Race Discrimination

Wright's Title VII racial discrimination claim is based only on the termination of her employment in September 2016. (ECF No. 20 at 7, 11-12). The Amended Complaint pleads facts about her termination in a single paragraph (¶39).[2] There are no facts pled to support a plausible inference that Wright was fired because of her race or to raise a reasonable expectation that discovery will reveal such evidence. Wright did not plead that she was replaced by a white person.

---

[2] Paragraph 40 of the Amended Complaint is a pure legal conclusion.

*See* Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410–11 (3d Cir. 1999) (plaintiff can establish a prima facie case by showing: (1) she is a member of a protected class; (2) is qualified for the position; (3) was fired from that position; and (4) under circumstances that give rise to an inference of unlawful discrimination such as when the position is filled by a person not of the protected class). Wright conclusorily alleges that defendants' cited reason, a September 2016 altercation with a subordinate, is pretextual, but provides no facts regarding the circumstances. Wright acknowledges that the incident occurred and explains that she remained calm while her co-worker was yelling and being insubordinate. The Amended Complaint does not describe the nature of the incident, the race of the co-worker, the discipline administered to the co-worker or details about defendants' decision to fire her. Wright did not plead any facts regarding similarly-situated employees involved in similar incidents who were more favorably treated. *See* Varughese v. Robert Wood Johnson Med. Sch., No. CV1602828FLWLHG, 2017 WL 4270523, at *7 (D.N.J. Sept. 26, 2017) (dismissing conclusory race discrimination claim) (citing Morton v. Arnold, 618 F. App'x 136, 141–42 (3d Cir. 2015) ("none of Morton's averments contain facts supporting an inference that Morton was terminated on the basis of race, and the complaint never intimates why Morton believes that race motivated the County's actions.") and Doe v. Sizewise Rentals, LLC, 530 F. App'x 171, 174 (3d Cir. 2013) (although complaint was "replete with details" of workplace grievances it was "devoid ... of factual allegations that ... defendants acted with any racially discriminatory animus.")); *see also* Washington v. Human Res. Manager Manheim Auto Auction, No. CV 17-2761, 2017 WL 4246896, at *2 (E.D. Pa. Sept. 22, 2017) ("For plaintiff to state a claim, he must describe the events that happened to him so it is clear why he believes he was discriminated against, forced to endure a hostile work environment, and/or terminated because of his race."); Liggon v. Simmons Pet Food, No. CIV.A. 15-1472 JBS, 2015 WL 1189561, at *3 (D.N.J. Mar. 13, 2015)

(dismissing claim because "the facts, as alleged by Plaintiff, suggest that he was fired because he missed work, not because of any racially discriminatory treatment") (citing Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010) (generalized allegations of how employer wronged plaintiff were insufficient to state a claim of race discrimination under Title VII). The court concludes that the Amended Complaint fails to plead sufficient facts for this court to infer that she has a plausible claim for race discrimination based on her termination.

### B. Hostile Work Environment

A hostile work environment claim based on conduct after December 19, 2015 also is not sufficiently pleaded. The Amended Complaint does not contain sufficient facts for this court to infer it states a plausible claim for "severe or pervasive" discrimination. Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017) ("isolated incidents (unless extremely serious) will not amount to [harassment]."). "Whether an environment is hostile requires looking at the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (citation omitted). The termination itself "does not create a hostile work environment because it eliminates the existence of a work environment all together." Roberts v. Health Partners Plans, Inc., No. CV 17-0297, 2017 WL 3310691, at *5 (E.D. Pa. Aug. 3, 2017).

The Amended Complaint, construed in the light most favorable to Wright, alleges that: Wright received two pretextual disciplines in January and March 2016 (factual details of which are not pled); Lutz encouraged her to go on disability rather than returning to work; Wright was required to come into work while on leave to be tested for tuberculosis; management provided

9

nurses with a bushel of bananas, although aware that Wright was allergic; Lutz ignored Wright and talked to white co-workers; Wright was falsely accused of bullying a co-worker to work on a different floor; Wright was falsely accused of violating the medication errors policy; and Wright was forced to work on days she requested vacation. None of these allegations is sufficient for this court to infer that there was an extremely serious isolated incident. This handful of incidents over nine months, as pled, are not sufficient for this court to reasonably infer there was pervasive discrimination altering the conditions of Wright's employment. In Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998), the United States Supreme Court cautioned that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." The Supreme Court explained that "[d]iscourtesy or rudeness should not be confused with racial harassment" and that "a lack of racial sensitivity does not, alone, amount to actionable harassment"); *see also* Stucke v. City of Philadelphia, 685 F. App'x 150, 154 (3d Cir. 2017) ("The Supreme Court has made clear that Title VII is not 'a general civility code' and that 'the ordinary tribulations of the workplace' are not grounds for a hostile work environment claim."). Wright did not sufficiently plead a viable hostile work environment claim.

        C.      Retaliation

Wright's Title VII retaliation claim must also be dismissed. She adequately pled protected activity (filing her first EEOC charge in September 2015) and an adverse employment action (her termination in September 2016). She, however, did not sufficiently plead a causal connection. The termination occurred one year after the protected activity. In the interim, the Amended Complaint states, Wright continued to work, was allowed to take sick leave, and returned to work. *See* Collins

v. Kimberly-Clark Pennsylvania, LLC, 247 F. Supp. 3d 571, 599 (E.D. Pa. 2017), aff'd, No. 17-1942, 2017 WL 4074535 (3d Cir. Sept. 14, 2017) (adverse action occurring within days is suggestive of causal link; action taken months later is not); McNeill v. Greyhound Lines, Inc., 628 F. App'x 101, 105 (3d Cir. 2015) (rejecting existence of causal link between employee's termination and the EEOC and PHRC complaints he filed more than a year earlier). The face of the Amended Complaint further undercuts the plausibility of any causal connection between the first EEOC charge and Wright's termination by acknowledging the intervening altercation with her subordinate in September 2016. Amended Complaint ¶ 39. There are insufficient factual allegations for this court to infer reasonably that there is a plausible causal connection.

In summary, the Amended Complaint fails to state cognizable race discrimination claims under any theory. Count V of the Amended Complaint will be dismissed.

### 3. Section 1981 Claims

Count IV of the Amended Complaint asserts race discrimination, retaliation and hostile work environment claims under § 1981. Defendants argue that Wright failed to alleged sufficient facts to support these theories, citing Gross v. R.T. Reynolds, Inc., 487 F. App'x 711, 716 (3d Cir. 2012). Wright argues that § 1981 claims have a four-year statute of limitations and do not require exhaustion of administrative remedies and contends that she pleaded sufficient discriminatory conduct occurring since June 2013.

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject

> to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). To state a claim under § 1981, a party must allege facts sufficient for a court to reasonably infer: "(1) [she] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts...." Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001) (citation and internal quotation marks omitted).

As an initial matter, the court agrees with Wright that Williams v. Pennsylvania Human Relations Commission, 870 F.3d 294 (3d Cir. 2017) (holding that an employee could not file "back door" Title VII or ADA claims under § 1983), is not controlling. Although the rationale of Williams seemingly would apply equally to § 1981 claims (i.e., "back door" claims thwart Congress' carefully crafted scheme requiring exhaustion of administrative remedies, id. at 299), Congress and the United States Supreme Court specifically declared otherwise. As explained in Johnson v. Federal Express Corp., 996 F. Supp. 2d 302 (M.D. Pa. 2014), aff'd, 604 F. App'x 183 (3d Cir. 2015):

> Section 1981, born of the Civil Rights Act of 1866, protected the right to make and enforce contracts, including contracts of employment, but it did not protect against harassing or discriminatory conduct that occurred after the formation of the contract. *See* Jones, 541 U.S. at 372–73, 124 S.Ct. 1836 (citing Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)). The Civil Rights Act of 1991 extended the protections of Section 1981 to harassing and discriminatory conduct during the contract. *Id*. at 372–73, 383, 124 S.Ct. 1836. In *Jones*, the Court concluded that the plaintiffs' race discrimination claims against their employer arose under the Civil Rights Act of 1991 and were therefore subject to a four-year statute of limitations pursuant to 28 U.S.C. § 1658. *Id*. at 383, 124 S.Ct. 1836.

Id. at 314. The § 1981 claims asserted by Wright encompass four years of alleged mistreatment and cannot be limited to the temporal scope of her parallel Title VII claims.

The substantive elements of an employment discrimination claim under § 1981 are generally identical to the elements of an employment discrimination claim under Title VII. Dixon v. Amerihealth Administrators, No. CV 17-1520, 2017 WL 3189136, at *4 (E.D. Pa. July 27, 2017) (citing Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 256 (3d Cir. 2017)). Because § 1981 claims are subject to a four-year limitations period, the court will consider all the allegations made by Wright in the Amended Complaint. Specifically, the court will accept as true that Lutz assigned Wright to assist in a less-desirable unit (although the date of this assignment is not stated), rejected her request that raw bananas not be served to patients, never granted her request for an accommodation regarding the bananas, and involuntarily assigned her to another unit in July 2015, shortly after Wright sought an accommodation regarding the bananas. Amended Complaint ¶¶ 25-28.[3] Wright conclusorily alleges, upon information and belief, that she was replaced in her unit by a white employee after she was transferred. Amended Complaint ¶ 30.

Wright fails to plead plausible claims under any race discrimination theory. There are simply no facts pled to support an inference that Wright was mistreated because of her race. There are no facts about selective enforcement of policies or pretextual discipline. The gist of the allegations is that Defendants failed to reasonably accommodate Wright's oral allergy syndrome. Wright's subjective belief, and bald, conclusory allegation that the alleged mistreatment was due to her race does not satisfy the *Twombly* standard. See Roberts v. Health Partners Plans, Inc., No. CV 17-0297, 2017 WL 3310691, at *3 (E.D. Pa. Aug. 3, 2017) (dismissing § 1981 claim where plaintiff vaguely and conclusorily alleged that she is a racial minority, that Defendant denied her request for unpaid leave, that Defendant terminated her, and that she believes both of those actions were taken

---

[3] The averments that Defendants "treated Plaintiff in a rude and condescending manner, spoke to her abruptly [and] selectively enforced policies against her," Amended Complaint ¶ 25, are too conclusory to be considered.

because of her race) (citing Howard v. Blalock Elec. Serv., Inc., 742 F. Supp. 2d 681, 702 (W.D. Pa. 2010) ("An inference of race-based discrimination cannot arise simply from an employee's subjective belief that his or her race somehow influenced the challenged employment action."). As in Roberts, Wright also failed to sufficiently plead the existence of other similarly situated individuals outside of her protected class who were more favorably treated.

None of the pre-December 19, 2015 allegations rises to the level of "severe or pervasive" harassment sufficient for the court to make a reasonable inference about a hostile work environment claim, for the reasons set forth above. *See Stucke*, 685 F. App'x at 154 (the ordinary tribulations of the workplace are not grounds for a hostile work environment claim).

The retaliation claim based on pre-December 19, 2015,[4] conduct fails because Wright did not plead an adverse employment action. As recently explained in Hair v. Fayette Cty. of Pennsylvania, No. 2:15CV341, 2017 WL 4023346 (W.D. Pa. Sept. 13, 2017): "A purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do. . . ." Id. at *18 (citations omitted). The mere fact that Lutz assigned Wright to a "disorganized" unit, absent any allegations of a change in pay or demotion in form or substance, is not sufficient for this court to reasonably infer that she has a plausible retaliation claim. In addition, Wright failed to plead sufficient facts showing that an adverse action was causally related to the filing of her first EEOC charge. In summary, the Section 1981 claims in Count IV will be dismissed.

---

[4] Wright failed to plead that her termination was causally related to any protected activity, as explained above.

4.  PHRA Claims

In Count VI, Wright merely reasserts the allegations set forth in Counts IV and V and argues that "such actions constitute identical violations of the [PHRA]." Amended Complaint ¶ 71. Defendants ask the court to decline to exercise supplemental jurisdiction over the parallel PHRA race discrimination claims in Count VI. Defendants also argue that a "dismissal of Count VI is proper to the extent Counts IV or V are dismissed." (ECF No. 15 at 13).

The case law is clear that the PHRA is interpreted consistently with Title VII and therefore, "the result of Defendants' motion [to dismiss] will be identical under both Title VII and the PHRA." Kaite v. Altoona Student Trans., Inc., No. 3:17-CV-5, 2017 WL 5029055, at *1 (W.D. Pa. Oct. 30, 2017). It would not be a prudent use of judicial resources to sever and remand the PHRA claims to the state court. Instead, the court will dismiss the PHRA claims in Count VI for the same reasons set forth above.

5.  Plaintiff's Request for Sanctions

Plaintiff's request for sanctions is moot. For the reasons set forth above, Defendants' motion to dismiss is meritorious. For Plaintiff's counsel's edification, both Local Rule 5.1(F) and Chambers Rule 1 (available at http://www.pawd.uscourts.gov/sites/pawd/files/conti_pp.pdf) of this judge, require a party to file a separate motion if they desire the court to take any action. Because the alleged misconduct relates to a signed filing, Federal Rule of Civil Procedure 11 is the most appropriate vehicle. Rule 11, of course, requires a separate motion and compliance with the twenty-one day "safe harbor" provision. Fed. R. Civ. P. 11(c)(2). Counsel are cautioned to not turn this litigation into an acrimonious personal war between the lawyers, characterized by ad hominem attacks and spurious accusations of unethical conduct. Plaintiff's counsel's request for sanctions

neither serves his client well, nor fosters the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. The court will not tolerate such conduct. *See Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 149 (D.N.J. 1999).

      6.     Leave to Amend

Wright filed her initial complaint on June 7, 2017. Defendants filed a motion to dismiss on September 6, 2017. On September 27, 2017, Wright mooted the motion to dismiss by filing an Amended Complaint. Defendants renewed their motion to dismiss the Amended Complaint on October 10, 2017.

When a complaint is subject to dismissal under Rule 12(b)(6), district courts should generally permit an opportunity to amend unless an amendment would be inequitable, or otherwise unjust by way of futility, bad faith, or undue delay. Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006). Wright requested leave to amend. (ECF No. 20 at 21). There has been no undue delay and it is not clear that Wright will be unable to correct the shortcomings identified in this opinion such that amendment would be futile.

Wright may file a motion to file a third complaint on or before December --, 2017. The court cautions that if Wright chooses to file a third complaint, it will be important to assure that the complaint contains all factual allegations needed to render the claim(s) "plausible" in compliance with the pleading standard set forth in *Twombly* because the court is unlikely to permit a fourth "bite at the apple."

Conclusion

Defendants' partial motion to dismiss the Amended Complaint will be GRANTED as follows: Counts IV, V and VI will be dismissed in their entireties; and Counts I and II will be dismissed to the extent they are based on conduct prior to December 19, 2015. On or before December 18, 2017, Wright may file a motion to file a second amended complaint. If she fails to do so, the case will proceed with the remainder of the Amended Complaint as filed and Defendants shall file an answer on or before December 28, 2017.

An appropriate order follows.


BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHAWANNA WRIGHT**, | ) CIVIL ACTION NO. 17-747 |
| Plaintiff, | ) JUDGE JOY FLOWERS CONTI |
| v. | ) |
| **PROVIDENCE CARE CENTER, LLC** *and* **BEAVER VALLEY ASSOCIATES, LLC** *doing business as* PROVIDENCE CARE CENTER, | ) |
| Defendants. | ) |

## ORDER

AND NOW, on this 7th day of December, 2017, for the reasons set forth in the accompanying memorandum opinion, IT IS HEREBY ORDERED Defendants' partial motion to dismiss the Amended Complaint (ECF No. 14) is GRANTED as follows: Counts IV, V and VI are dismissed in their entireties; and Counts I and II are dismissed to the extent they are based on conduct prior to December 19, 2015. On or before December 18, 2017, Wright may file a motion to file a second amended complaint. If she fails to do so, the case will proceed with the remainder of the Amended Complaint as filed and Defendants shall file an answer on or before December 28, 2017. The case management conference scheduled for December 19, 2017 is cancelled and will be rescheduled by the court.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge