IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHAWANNA WRIGHT**, | CIVIL ACTION NO. 17-747 |
| Plaintiff, | CHIEF JUDGE JOY FLOWERS CONTI |
| v. | |
| **PROVIDENCE CARE CENTER, LLC** *and* **BEAVER VALLEY ASSOCIATES, LLC** *doing business as* PROVIDENCE CARE CENTER, | |
| Defendants. | |

## **MEMORANDUM OPINION**

This is an employment discrimination case. On December 7, 2017, the court granted a partial motion to dismiss filed by defendants Providence Care Center, LLC and Beaver Valley Associates, LLC ("Defendants"). Counts IV, V and VI of the first amended complaint filed by plaintiff Shawanna Wright ("Wright") were dismissed in their entireties and Counts I and II were dismissed to the extent they were based on conduct prior to December 19, 2015 (300 days prior to Wright's second EEOC charge). Wright filed a second amended complaint (ECF No. 29) and Defendants filed a renewed motion for partial dismissal (ECF No. 30). The motion is fully briefed and ripe for disposition. (ECF Nos. 31, 33, 37).

Factual and Procedural Background

The second amended complaint continues to assert six counts, most of which contain multiple distinct legal theories: (1) violations of the Americans with Disabilities Act ("ADA"), 42

1

U.S.C. § 12101 et seq., for actual/perceived/record of disability discrimination, retaliation and hostile work environment; (2) parallel disability theories under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq.; (3) violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., for interference and retaliation; (4) violation of § 1981, 42 U.S.C. § 1981, for racial discrimination and retaliation based on the termination of her employment; (5) violation of Title VII, 42 U.S.C. § 2000a et seq., for racial discrimination and retaliation based on the termination of her employment; and (6) parallel racial discrimination and retaliation theories under the PHRA based on the termination of her employment. Wright no longer asserts claims for a hostile work environment under § 1981 or Title VII, although she maintains her hostile work environment claim under the ADA. Defendants seek dismissal of parts of counts one, two and three and all of counts four, five and six.

In the December 2017 memorandum opinion and order, the court held that the ADA, Title VII and PHRA claims based on discrete actions occurring more than 300 days prior to her second EEOC charge (i.e., December 19, 2015) are time barred.[1] Wright represents that she is not asserting any time-barred claims in the second amended complaint and that she included factual averments about earlier conduct "merely as evidence of pretext, antagonism and a pattern of discrimination/retaliation." (ECF No. 33 at 6).

Plaintiff is an African-American female with various disabilities, including asthma oral allergy syndrome. She was employed by Defendants for thirteen years as a Licensed Practical Nurse ("LPN"). Wright alleges that she was subjected to discriminatory and retaliatory treatment because of her race, disability or requests for reasonable accommodations.

---

[1] The court explained that Wright failed to show an adverse action to support a § 1981 claim prior to December 19, 2015.

The court adopts the factual summary set forth in its December 2017 memorandum opinion, which was based on the first amended complaint:

> On September 15, 2015, shortly after RN Supervisor Bobbye Lutz ("Lutz") assigned her to a less-desirable unit, Wright filed her first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 15-1). On June 29, 2016, the EEOC issued a Notice of Dismissal and right to sue letter to Wright. (ECF No. 15-2). Wright did not file a lawsuit within ninety days of receiving the EEOC letter.
>
> Following the first EEOC charge, Wright alleges that she was subjected to continued hostility, including an accusation of intimidating a co-worker into taking a shift on a different floor, and two pretextual disciplines. Wright did not plead any facts regarding the circumstances leading to these disciplines. She avers that Lutz told her that unit manager Lisa Brewer ("Brewer") recommended them, and Brewer signed a statement denying it. (Amended Complaint ¶¶ 32-34).
>
> From March through July 11, 2016, Wright was on medical leave. She returned to work without any restrictions. Wright alleges that the discriminatory and retaliatory treatment continued. For example, Lutz did not believe that Wright was able to work and should go on Social Security disability; in May 2016, on a day that Wright returned to work, management provided a bushel of bananas to the nurses, even though they knew Wright was allergic to them; Lutz went out of her way to ignore Wright in the hallways, but greeted white, non-disabled co-workers; Lutz accused Wright of bullying a co-worker into taking a shift on a different floor; Lutz falsely accused Wright of violating the policy for making medication errors, while a white, non-disabled co-worker made multiple medication errors but was not punished; and management lost Wright's requests for days off and required her to work on days she requested to be off. (Amended Complaint ¶ 38).
>
> Wright was terminated by Lutz in September 2016, purportedly for getting into an altercation with another employee. Wright alleges that during the incident, the other employee was yelling and being insubordinate while she remained calm. (Amended Complaint ¶ 39).
>
> Wright filed a second charge on October 14, 2016, with the EEOC and the Pennsylvania Human Relations Commission ("PHRC"). The charge alleges that Wright was terminated based on her race, national original or health and in retaliation for her earlier complaints about discrimination. (ECF No. 15-3). She avers that she properly exhausted her administrative remedies and filed this lawsuit within ninety days of receiving a right to sue letter from the EEOC after her second charge.

Wright makes several additional allegations in the second amended complaint: (1) she was assigned to do additional tasks (in addition to her normal duties) that co-workers did not have to complete, for example, she was required to help a white, non-disabled LPN complete her work; (2) one of the allegedly pretextual disciplines she received after filing her first EEOC charge was for completing cognitive questions in the computer system incorrectly, although Wright had entered questions in the same way for several years and was told it was correct; (3) Lutz accused her of violating the policy for making medication errors even though Lutz knew that Joyce (a white, nondisabled co-worker) made the error; (4) she was pretextually terminated after a September 2016 altercation with a co-worker during which the other employee yelled and was insubordinate while Wright remained calm; (5) she was disparately punished in that white, non-disabled employees engaged in rude, unprofessional, intimidating and threatening behaviors without being terminated; and (6) she was replaced after her termination by a white, non-disabled LPN. Second Amended Complaint ¶¶ 34, 35, 37, 43-46, 47.

**Standard of Review**

The Court of Appeals for the Third Circuit recently reiterated the standards and procedures that a district court must apply when deciding a Rule 12(b)(6) motion to dismiss:

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But a detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

> alleged." Id.; see also Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," Twombly, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a NGL has acted unlawfully." Iqbal, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability...stops short of the line between possibility and plausibility of entitlement to relief." Id. (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.
>
> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679; see also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Connelly v. Lane Constr. Corp., 809 F.3d 780, 786-87 (3d Cir. 2016). The court explained that a plaintiff need not specify whether she intends to proceed under a "mixed-motive" or a "pretext" theory. Id. at 788. A complaint "need not establish a prima facie case in order to survive a motion to dismiss." Id. To meet the post-Twombly pleading standard, there must be "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Id. at 789.

"In deciding a Rule 12(b)(6) motion, a court may consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). In ruling on the pending motion, the court will consider the EEOC charges attached to Defendants' brief. *See* Zanaglio v. J.J. Kennedy, Inc., No. CV 17-874, 2017 WL 3492696, at *2 (W.D. Pa. Aug. 15, 2017) (considering PHRC filings a defendant provided as exhibits to its motion

to dismiss).

Legal Analysis

Defendants assert several arguments: (1) Wright continues to assert untimely claims; (2) the FMLA interference claim should be dismissed because the second amended complaint establishes on its face that Wright received the twelve weeks of leave to which she was entitled; (3) Wright failed to plead a sufficient causal connection to support a retaliation claim; and (4) Wright failed to allege sufficient facts to support plausible claims of race discrimination in the termination. These arguments will be addressed seriatim.

1. Claims Based on Conduct Prior to December 19, 2015

Wright affirms and represents that she is not asserting claims based on conduct prior to December 19, 2015. (ECF No. 33 at 6). The second amended complaint does not assert claims based on such conduct. This aspect of the motion to dismiss will be DENIED AS MOOT.

2. FMLA Interference Claim

It is clear, on the merits, that Wright's FMLA interference claim must fail. The FMLA statute provides that an eligible employee is entitled to twelve workweeks of leave during any one year period. 29 U.S.C. § 2612(a)(1)(D). The second amended complaint avers that Wright began an FMLA-qualifying leave in March 2016 and returned to work on July 11, 2016. (ECF No. 29 at ¶¶ 38, 41). The court takes judicial notice that this period of time exceeded twelve weeks. As explained in Ragsdale v. Wolverine Worldwide, Inc., 218 F.3d 933, 937 (8th Cir. 2000), *aff'd sub nom.* Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81 (2002), twelve weeks of leave is both the minimum the employer must provide and the maximum the FMLA requires. Wright cannot

require defendants to provide more than the twelve weeks of unpaid leave mandated by the FMLA. *Id*.

That conclusion does not end the analysis, however. Wright contends that Defendants waived this argument because they failed to raise it in their previous motions to dismiss. In Leyse v. Bank of America National Association, 804 F.3d 316, 320 (3d Cir. 2015), the court explained that the purpose of the "consolidation rule" in Federal Rule of Civil Procedure 12(g)(2) is "to eliminate unnecessary delay at the pleading stage" by encouraging "the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense" simultaneously rather than "interposing these defenses and objections in piecemeal fashion." Leyse, 804 F.3d at 320.

Defendants argue persuasively that they did not violate the consolidation rule because they did not file piecemeal motions to dismiss with respect to the second amended complaint, which superseded all prior complaints. Even assuming that Defendants violated the "consolidation rule," the substance of their FMLA argument can be considered at this stage of the case to promote the just, speedy and inexpensive determination of this action. *See* Fed. R. Civ. P. 1. In Leyse, the court upheld dismissal of the claim despite the violation of the "consolidation rule." The court explained:

> A district court's decision to consider a successive Rule 12(b)(6) motion to dismiss is usually harmless, even if it technically violates Rule 12(g)(2). So long as the district court accepts all of the allegations in the complaint as true, the result is the same as if the defendant had filed an answer admitting these allegations and then filed a Rule 12(c) motion for judgment on the pleadings, which Rule 12(h)(2)(B) expressly permits. Requiring these additional steps would serve little purpose here. If we vacate and remand without ruling on the merits, Bank of America will inevitably raise its arguments in a post-answer Rule 12(c) motion, and the case will come up on appeal a third time. Creating such delay seems contrary to the purposes of Rule 12(g)(2).

Id. at 321-22. The court accepts as true all the FMLA allegations in Wright's second amended complaint. Defendants did not waive the substance of their legal challenge to the FMLA interference claim. As in Leyse, it would serve no purpose to require defendants to file an answer and then reassert their argument in a motion for judgment on the pleadings or at summary judgment. In sum, this portion of the motion to dismiss will be GRANTED.

    3.    Retaliation Claims

In the December 2017 memorandum opinion, the court explained that Wright adequately pled protected activity (filing her first EEOC charge in September 2015) and an adverse employment action (her termination in September 2016), but failed to sufficiently plead a causal connection because the termination occurred one year after the protected activity. In the interim, Wright continued to work, was allowed to take sick leave, returned to work, and was involved in an altercation with a coworker shortly before she was fired. *See* Collins v. Kimberly-Clark Pennsylvania, LLC, 247 F. Supp. 3d 571, 599 (E.D. Pa. 2017), aff'd, No. 17-1942, 2017 WL 4074535 (3d Cir. Sept. 14, 2017) (adverse action occurring within days is suggestive of causal link; action taken months later is not); McNeill v. Greyhound Lines, Inc., 628 F. App'x 101, 105 (3d Cir. 2015) (rejecting existence of causal link between employee's termination and the EEOC and PHRC complaints he filed more than a year earlier).

Defendants renew their motion to dismiss the Title VII and § 1981 retaliation claims asserted in the second amended complaint. Defendants contend that there are still no allegations of a plausible causal connection between the filing of the EEOC charge in 2015 and her termination in September 2016. Wright argues that she pled a cognizable pattern of antagonism during the intervening time period. *See* Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)

(where there is a lack of temporal proximity, circumstantial evidence of a "pattern of antagonism" following the protected conduct can also give rise to an inference of retaliation). She avers that she received two pretextual "disciplines" after filing the EEOC charge, was assigned additional tasks in late 2015, and when she returned to work in July 2016 Lutz conspicuously ignored her, falsely accused her of bullying and making medication errors and did not allow her to take requested days off.

The cumulative effect of Wright's allegations does not show a pattern of antagonism during the intervening year. During the months after she filed the first EEOC charge, Wright points conclusorily to two disciplines and some unspecified additional tasks. Wright's allegations of mistreatment upon her return to work in July 2016, after completing her FMLA leave, are too far removed in time to be causally connected to the EEOC filing. In Kachmar, by comparison, the employee was advised to look for another job and removed from the management track within months of her protected activity. 109 F.3d at 177-78. *See, e.g.,* Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001), *overruled in part on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 (2006) (distinguishing Katchmar and holding that disciplines did not establish a pattern of antagonism to establish a causal link).

To the extent that Wright is arguing that the "disciplines" she received are themselves adverse actions, she is incorrect. The Supreme Court defines an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Clark v. Philadelphia Hous. Auth., 701 F. App'x 113, 117 (3d Cir. 2017) (*quoting* Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 749 (1998)). Wright must plausibly show how her work changed in a way that would have dissuaded a reasonable employee from engaging in protected conduct. Fleck v. Wilmac Corp., No. CIV.A. 10-

05562, 2012 WL 1033472, at *13 (E.D. Pa. Mar. 27, 2012); see Mieczkowski v. York City Sch. Dist., 414 F. App'x 441, 447 (3d Cir. 2011) (letters of reprimand that "do not effect a material change in the terms or conditions" of one's employment cannot constitute adverse employment actions).

The burden is on the plaintiff to establish how oral or written reprimands create a material change in the terms or conditions of employment to constitute an adverse employment action. Weston, 251 F.3d at 431 (rejecting the district court's presumption that written reprimands adversely affected the terms and conditions of employment). Despite the court's caution to Wright in the December 2017 memorandum opinion that she must ensure that the second amended complaint contains all factual allegations needed to render the claims plausible, she failed to do so. Wright did not provide any factual details about one of the two disciplinary actions. (*See* ECF No. 29 ¶¶ 36-37). Wright did not plead the dates or any details about the disciplines (such as whether they were written or oral), and did not show how they constituted a material change in her employment. The averment in ¶¶ 34-35 about being assigned additional (unspecified) tasks is similarly vague and fails to show how the tasks constituted a material change in her employment. The only actionable adverse employment action is Wright's termination, which occurred a year after her protected activity. In summary, Wright failed to plead cognizable retaliation claims. This aspect of the motion to dismiss will be GRANTED.

4. Race Discrimination Claims

Wright's § 1981 and Title VII claims will be addressed together because the elements of an employment discrimination claim are generally identical under those statutes. Dixon v. Amerihealth Administrators, No. CV 17-1520, 2017 WL 3189136, at *4 (E.D. Pa. July 27, 2017)

(citing Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 256 (3d Cir. 2017)). As explained previously, the race discrimination claims in this case are limited to the termination of Wright's employment. Defendants argue that the second amended complaint fails to state a plausible claim and point out that Wright again failed to provide details about the September 2016 altercation with a co-worker.

The elements of a prima facie case of racial discrimination are: (1) Plaintiff is a member of a protected class: (2) Plaintiff was qualified for the position she held: (3) Plaintiff suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably or the circumstances of Plaintiff's termination give rise to an inference of discrimination. Kimble v. Morgan Properties, 241 Fed. App'x 895, 897–98 (3d Cir. 2007). The court is mindful of the instruction in Connelly that the prima facie case is an evidentiary standard, not a pleading standard. Connelly, 809 F.3d at 789.

Wright alleges in the second amended complaint that she was replaced after her termination by a white, non-disabled LPN. (ECF No. 29 ¶ 47). In Jones v. School District of Philadelphia, 198 F.3d 403, 410–11 (3d Cir. 1999), the court explained that a plaintiff can establish the fourth element of the prima facie case by showing that she was terminated under circumstances that give rise to an inference of unlawful discrimination, "such as might occur when the position is filled by a person not of the protected class." *Accord* Finn v. Porter's Pharmacy, No. CIV.A. 15-661, 2015 WL 5098657, at *3 (W.D. Pa. Aug. 31, 2015) ("Plaintiff was replaced by a man, which by itself creates an inference of discrimination and satisfies the fourth prong of the prima facie case. Plaintiff therefore need not allege additional facts or compare herself to anyone else in order to meet her burden"). Wright pleaded a cognizable claim that she was fired based on her race. This aspect of

the motion to dismiss will be DENIED without prejudice to defendants' ability to challenge the adequacy of the claims at summary judgment or trial.

5. PHRA Claims

The parallel PHRA claims asserted by Wright will be treated identically to their federal law counterparts. The motion to dismiss the PHRA claims in count 6 will be GRANTED IN PART regarding the retaliation claim, and DENIED IN PART regarding the race discrimination claim.

Conclusion

Defendants' partial motion to dismiss the second amended complaint (ECF No. 30) will be GRANTED IN PART as follows: (1) the FMLA interference claim in count 3 is dismissed with prejudice; and (2) the retaliation claims in counts 4, 5 and 6 are dismissed with prejudice. The motion to dismiss the racially discriminatory termination claims in counts 4, 5 and 6 is DENIED. Because Wright is not asserting any claims based on conduct prior to December 19, 2015 (300 days prior to Wright's second EEOC charge), it is unnecessary to dismiss portions of the disability discrimination claims in counts 1 and 2. Defendants shall file an answer on or before April 25, 2018.

An appropriate order follows.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWANNA WRIGHT**, | ) | CIVIL ACTION NO. 17-747 |
| Plaintiff, | ) ) ) | JUDGE JOY FLOWERS CONTI |
| v. | ) ) ) ) | |
| **PROVIDENCE CARE CENTER, LLC** and **BEAVER VALLEY ASSOCIATES, LLC** *doing business as* PROVIDENCE CARE CENTER, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

AND NOW, on this 12th day of April, 2018, for the reasons set forth in the accompanying memorandum opinion, IT IS HEREBY ORDERED that Defendants' partial motion to dismiss the second amended complaint (ECF No. 30) is GRANTED IN PART as follows: (1) the FMLA interference claim in count 3 is dismissed with prejudice; and (2) the retaliation claims in counts 4, 5 and 6 are dismissed with prejudice. The motion to dismiss the racially discriminatory termination claims in counts 4, 5 and 6 is DENIED. Defendants shall file an answer on or before April 25, 2018.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge